UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Lava Rubber, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>Mailot Enterprises, LLC, d/b/a East Coasters, Jason Mailot, John Does 1-10 (Fictitious Defendants) XYZ Corporations 1-10 (Fictitious Defendants) and ABC Entities,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT WITH DEMAND FOR TRIAL BY JURY** |

1. This is an action for breach of contract, trademark infringement, unfair competition, and trademark dilution, in which Plaintiff Lava Rubber, LLC ("Lava" or the "Company") seeks preliminary and permanent injunctive relief as well as damages against Defendants Mailot Enterprises, LLC, d/b/a East Coasters ("EC") and Jason Mailot ("Mailot") (collectively, "Defendants").

## PARTIES AND JURISDICTION

2. Lava is a New Jersey limited liability company, with its principal place of business located at 155 Steiner Ave., Suite B, Borough of Neptune City, County of Monmouth, State of New Jersey.

3. Lava is engaged in the manufacture and sale of recycled rubber mats and coasters.

4. EC, with its principal place of business located at P.O. Box 214, Barnegat Township, County of Ocean, State of New Jersey, is engaged in the manufacture and sale of recycled rubber mats and coasters, and is incorporated in the State of New Jersey.

5. Mailot, upon information and belief, resides at 144 Windward Drive, Barnegat Township, County of Ocean, State of New Jersey, and is EC's sole owner and President.

6. Defendants John Does 1-10 are individuals who at all material times were employees, agents, or representatives of Defendants and whose exact identity, role and number are subject to further investigation and discovery.

7. Defendants XYZ Corporations 1-10 are corporations which are related to EC, used as a corporate identity for EC, and/or control the day-to-day activities of EC, and which were involved in the facts which give rise to this Complaint.

8. Defendants ABC Entities are successors in interest, servants, assigns, controlling corporations or entities, corporations and/or entities which are related to EC, used as a corporate identity for EC, and/or control the day-to-day activities of EC, and which were involved in the facts which give rise to this Complaint.

9. This Court has original subject matter jurisdiction over this action under 28 U.S.C. § 1338(a), because this action arises under an Act of Congress relating to trademarks.

10. This Court has supplemental jurisdiction over this action under 28 U.S.C. § 1367 in that the supplemental claims relate to the original claim over which this Court has subject matter jurisdiction.

11. This Court has personal jurisdiction over Defendants in that they all reside in this District.

## FACTS COMMON TO ALL COUNTS

12. Starting in 2009, Lava's owner, Michael Briody ("Briody"), began collecting scraps from surfers, divers, surf schools, marine institutes, day camps, outdoor shops and neoprene manufactures in order to manufacture and sell recycled rubber mats and coasters.

13. In 2011, Briody formed Lava.

14. In 2011, Briody and Lava first used the name "MOODMATS" in commerce in connection with Lava's advertisement, marketing and sale of recycled rubber mats and coasters.

15. At all times since 2011, Lava has worked to market and promote the "MOODMATS" name, which is a registered trademark, in connection with the sale of recycled rubber mats and coasters.

16. Lava is the exclusive owner of federally registered United States trademark, including the mark: "MOODMATS" (Registration No. 5,620,246) (the "Lava Trademark").

17. At all times, Lava has successfully promoted the "MOODMATS" name through, among other things, its website and social media platforms and postings, and its participation at, sponsorship of, tradeshows and expositions across the nation.

18. Individuals and businesses considering the purchasing of recycled rubber mats and coasters have long identified and associated the name "MOODMATS" with Lava.

19. On February 6, 2014, Lava and Mailot entered into a Sales Operating Agreement with Lava ("Agreement"), whereby Mailot agreed, among other things, to serve as a full-time independent sales representative to sell Lava's products, including recycled rubber mats and coasters under the name "MOODMATS."

20. The Agreement provided, at Section 8 [Proprietary Information & Non-Disclosure], as follows:

> The Representative acknowledges that, in the course of performing his duties under this Agreement, he may obtain information relating to the Products and to the Company that is of a confidential and proprietary nature ("Proprietary Information"). Such Proprietary Information may include, but is not limited to, trade secrets, know-how, inventions, techniques, processes, computer programs, schematics, data, customer lists, financial information and sales and marketing plans. The Representative and his employees and agents shall at all times, both during the term of this agreement and after its termination, keep in trust and confidence all Proprietary Information and shall not use such Proprietary Information other than in the course of his duties under this Agreement, nor shall the Representative or his employees and agents disclose any of such Proprietary Information to any person without the Company's prior written consent. The Representative acknowledges that any such Proprietary Information received by the Representative shall be received as a fiduciary of the Company. The Representative further agrees to immediately return to the Company all Proprietary Information in the Representative's possession, custody or control in whatever form held (including all copies of all written documents relating to that) upon termination of this Agreement or at any time, or from time to time, upon the request of Company.

21. Upon information and belief, Mailot had no prior knowledge or experience in the manufacture and/or sale of any of the products made and sold by Lava, including recycled rubber mats and coasters.

22. At all times during Mailot's independent contractor relationship with Lava, he was entrusted with and had access to, among other things, Lava's *QuickBooks* account and files. Specifically, Mailot had access to, among other things, all of Lava's customer names and contact information, customer ordering histories, pricing, supplier-related information, and emails and business cards acquired from tradeshow exhibitions. Mailot also had access to Lava's trade secrets and proprietary information relating to, among other things, how to print on rubber, how to screen print rubber, how to die cut rubber, and various other printing techniques.

23. Mailot ended his independent contractor relationship with Lava in March 2014 when he told Briody that he could not handle the stress of a sales position.

24. A few weeks later, Briody discovered that Mailot, on April 3, 2014, sent a mass email solicitation to every individual on Lava's customer and prospect list to order to sell them *"recycled rubber coasters made from neoprene and wetsuit scraps that otherwise go to a landfill"* (the "April 2014 Mailing").

25. By the April 2014 Mailing, Mailot misappropriated the access he had to Lava's confidential pricing information by, among other things, offering recycled rubber mats and coasters to Lava's customers and prospects at prices that were less than the prices that Lava charged at the time for the same products.

26. At the end of the April 2014 Mailing, Mailot identified himself as "Founder/CEO" of "East Coasters."

27. By email dated April 3, 2014, in response to the April 2014 Mailing, Lava's attorney sent a cease and desist letter to Mailot demanding that Mailot and EC, among other things, stop using Lava's contacts and destroy any and all of Lava's trade secret and proprietary information in his possession.

28. By email dated April 14, 2014, Mailot and EC assured Lava's attorney that he would *"not send any more of those emails"* and that he has *"not generated any sales or money, and furthermore I will even forward along the information for the people who expressed interest. I hope this puts an end to all of this and we can move forward."*

29. Based on Mailot's representation in his email of April 14, 2014, Lava understood that Mailot and EC had ceased their unlawful misappropriation of, among other things, Lava's customer and prospect list and pricing information.

30. By email dated April 24, 2014, Mailot informed Lava that EC's supplier of recycled rubber had informed EC that it would no longer sell recycled rubber to EC. Mailot stated that he was holding Lava responsible for any loses experienced by EC as a result of the supplier's decision. Lava, however, had no involvement with any supplier's decision to sell, or not sell, recycled rubber to EC.

31. In addition, in Mailot's email of April 24, 2014, he threatened Lava that even though he had previously assured Lava that he "*would not participate in that [recycled rubber products] industry*," he would now sell recycled rubber products "*at lower prices*," "*cut profits*," and "*make it [his] life's mission*" to compete directly against and to damage Lava.

32. Lava did not respond to Mailot's threatening April 24, 2014 email.

33. Thereafter, for the next several years, Briody and Lava were not aware of action taken or activities by Mailot or EC to compete unfairly against Lava, to misappropriate any of Lava's confidential information and trade secrets, or to otherwise do anything that would damage Lava.

34. In late 2018, Lava learned of EC's effort to sell recycled rubber mats and coasters through a *Google* Ad campaign that used the name "MOODMATS," and also through mass email solicitations that contained the name "MOODMATS" in the subject line of the email solicitations.

35. In addition, in late 2018, Lava learned of EC's sale of recycled rubber mats and coasters with the "MOODMATS" name stamped on the underside of the mats and coasters.

36. In late 2018, Lava also learned that EC had acquired an updated contact list of Lava's customers and prospects, and that EC has used that list for mass email solicitations in order to sell recycled rubber mats and coasters to Lava's customers and prospects.

37. Lava learned of EC's *Google* Ad using the name "MOODMATS," its mass email solicitations referencing the "MOODMATS" name in the subject line, and its misappropriate of Lava's updated customer and prospect list from several of Lava's customers and other contacts. For example, in this regard, Lava received the following information:

- By email dated November 12, 2018, Travis Lemasters of Erbivore, LLC forwarded to Briody the email solicitation that he received from EC on November 12, 2018, with the "MOODMATS" name in the subject line. Mr. Lemasters further stated: *"Sad that they have to use your name in their advertisements."*

- By text message on December 22, 2018, Michele Yanetta of Crosta, a fashion and wardrobe stylist, advised Briody that she had been receiving email solicitations from EC with the "MOODMATS" name in the subject line. Ms. Yanetta further stated: *"I got another email from east coasters. I went to unsubscribe and look what it says! Moodmats customer list. Is this guy hacking you?"*

- By email dated December 28, 2018, Denny Tentindo of Witch Dr. Studio, forwarded to Briody the email solicitations that he had been receiving from EC with the "MOODMATS" name in the subject line. Mr. Tentindo further stated: *"I don't know how he got my email. I did not sign up to be on his list."*

- By email dated January 2, 2019, John Donnachie of CydeBank Media, advised that he had been receiving emails from EC with the "MOODMATS" name in the subject line. Mr. Donnachie further advised that *"I believe they have somehow stolen my contact information from Moodmats [Lava] and added it to their own list in order to send commercial solicitations."* In addition, Mr. Donnachie explained that after he had unsubscribed to EC's mass mailing, that the mailing list at issue was identified by *MailChimp* as the "MOODMATS Customer List."

38. Lava responded to EC's *Google* Ad using the name "MOODMATS," its mass email solicitations using referencing the "MOODMATS" name in the subject line of the emails, and its misappropriation of Lava's updated customer and prospect list from several of Lava's customers and other contacts by sending a cease and desist letter to Mailot and EC dated December 31, 2018, which, among other things, warned Mailot and EC as follows:

> Your [Mailot and EC] continued infringement of the "Moodmats" name will not be tolerated. Lava demands that You immediately cease and desist from any continued and further reference to, or the use of, "Moodmats" in advertising, distribution, and offering for sale of the Products. Indeed, to avoid the lawsuit that Lava will file, wherein injunctive and other relief will be sought, You must provide, *within five days of the date of this letter*, a certification or affidavit to us confirming that You (1) have removed any and all reference to "Moodmats" from all of Your advertising and sales efforts, and (2) will forever refrain from any further reference or use of "Moodmats" in any advertising and sales efforts. If we do not receive same by January 7, 2019, Lava's lawsuit will follow.

39. In addition, by said letter dated December 31, 2018, Lava further advised Mailot and EC as follows: "[b]ecause litigation is imminent, we demand that You [Mailot and EC] preserve all documentary and other evidence that may be relevant to Lava's claims, whether or not such documents may be the subject of a claim of privilege or confidentiality now or in the future."

40. Mailot and EC have not responded to Lava's cease and desists letter dated December 31, 2018.

41. Thereafter, upon learning from Mr. Donnachie that when he unsubscribed from EC's mass email solicitations that the mailing list at issue was identified by *MailChimp* as the "Moodmats Customer List," a second cease and desist and preservation of evidence letter dated January 4, 2019 was sent to Mailot and EC.

42. In that January 4, 2019 letter, Lava advised Mailot and EC that individuals had brought EC's *MailChimp* mass mailings to Lava's attention because they were not only confused by the reference to the "MOODMATS" name by a business other than Lava, but they were concerned that Lava had been hacked and/or that its mailing lists had been stolen.

43. Mailot and EC have not responded to Lava's cease and desists letter dated January 4, 2019.

44. Mailot and EC have taken, and continue to take, action that has created and continues to create confusion in the marketplace relating to the "MOODMATS" name; that is, causing individuals and businesses interested in purchasing recycled rubber mats and coasters to mistakenly associate the "MOODMATS" name with EC instead of Lava.

45. Mailot and EC have diverted, and continue to divert, existing and/or potential customers away from Lava and to EC.

## COUNT I
## Trademark Infringement by Defendants

46. Lava repeats and realleges paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. By continuing to market and sell merchandise using the Lava Trademark, Defendants have infringed and are continuing to infringe the Lava Trademark in violation of 15 U.S.C. § 1114.

48. The conduct of Defendants as above alleged has caused and is likely to continue to cause confusion, or to cause mistake or to deceive, in violation of Section 32(1)(a) of the Lanham Act.

49. The acts of Defendants herein alleged have been committed with knowledge that the use and imitation of the Lava Trademark is intended to be used to cause confusion, or to cause mistake or to deceive.

50. As a result of Defendants' conduct, Lava has suffered, and will suffer, damages in an amount not now precisely ascertainable, but which Lava is entitled to recover at trial.

51. Defendants' aforesaid trademark infringement has caused, and is likely to cause, irreparable harm to Lava. Lava lacks an adequate remedy at law for the harm caused thereby.

## COUNT II
### False Designation Against Defendants

52. Lava repeats and realleges paragraphs 1 through 51 of this Complaint as if fully set forth herein.

53. The use by Defendants of the Lava Trademark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with Lava, or as to the origin, sponsorship or approval by Lava of the merchandise of Defendants, all in violation of 15 U.S.C. § 1125(a).

54. As a result of Defendants' conduct, Lava has suffered, and will suffer, damages in an amount not now precisely ascertainable, but which Lava is entitled to recover at trial.

55. Defendants' aforesaid false designation and unfair competition has caused, and is likely to cause, irreparable harm to Lava.

56. Lava lacks an adequate remedy at law for the harm caused thereby.

## COUNT III
## Trademark Dilution Against Defendants

57.    Lava repeats and realleges paragraphs 1 through 52 of this Complaint as if fully set forth herein.

58.    By their conduct, Defendants have caused dilution of distinctive quality of the Lava Trademark.

59.    Said conduct on behalf of Defendants was willful and constitutes and was engaged in with willful intent to trade on Lava's reputation or to cause dilution of Lava's trademarks.

60.    By reason of their conduct, Defendants have caused, and are continuing to cause, irreparable harm to Lava.

61.    By their conduct, Defendants have caused Lava to sustain damages.

## COUNT IV
## Misappropriation Against Defendants

62.    Lava repeats and realleges paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63.    Lava expended substantial time, effort, money and resources in developing and maintaining its confidential and proprietary information, including but not limited to, the confidential customer information identified in the preceding paragraphs herein.

64.    Lava maintains the confidentiality of this information for its exclusive benefit and competitive advantage.  Much of the economic benefit to Lava from this information stems from its confidential nature, because if Lava's confidential information were to become known to competitors, Lava would lose the competitive advantage afforded it by this information.

65. Defendants, along with the as yet unidentified Doe Defendants and XYZ Defendants, with potentially Defendants ABC Company, have wrongfully obtained, retained, used and disclosed Lava's confidential and proprietary information for the benefit of Defendants to the detriment of Lava.

66. Defendants have obtained and removed confidential and proprietary information of Lava, without authorization and with the intent to harm Lava.

67. As a result of this misconduct, Lava has suffered, and will continue to suffer, irreparable harm unless it receives injunctive relief.

68. Lava has no adequate remedy at law or, the remedy at law available to Lava would not adequately protect it from Defendants' wrongful conduct.

69. Lava is also entitled to compensatory and punitive damages for the wrongful, intentional and malicious conduct of Defendants in an amount to be determined at trial.

## COUNT V
## Breach of Contract Against Defendant Mailot

70. Lava repeats and realleges paragraphs 1 through 69 of this Complaint as if fully set forth herein.

71. As alleged above, Mailot entered into a Sales Operating Agreement with Lava, wherein Mailot agreed, among other things, that he would not use the Proprietary Information that he received, other than in the course of his duties under the Sale Operating Agreement, nor would he disclose any Proprietary Information to any person without the prior written consent of Lava.

72. Mailot further agreed that he would immediately return to Lava "all Proprietary Information in the Representative's possession, custody or control in whatever form held (including all copies of all written documents relating to that) upon termination of this Agreement or at any time, or from time to time, upon the request of Company."

73. Upon the termination of his relationship with Lava, Mailot used the Proprietary Information that he had received from the Company and did so for his own purposes and for the benefit of others.

74. Upon the termination of his relationship with Lava, Mailot refused to return all Company Proprietary Information, in violation of the Sales Operating Agreement.

75. By his conduct, Mailot has breached and continues to breach his contractual obligations to Lava.

76. As a result of Mailot's breach, Lava has been damaged in an amount to be determined at trial.

## COUNT VI
### Breach of Covenant of Good Faith and Fair Dealing Against Defendant Mailot

77. Lava repeats and realleges paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. In every contract there exists an implied covenant of good faith and fair dealing.

79. Mailot understood that his obligations to Lava under the Sales Operating Agreement precluded him from using the Proprietary Information entrusted to him in confidence for purposes that would harm Lava's interests.

80. As alleged above, Mailot has breached the implied covenant of good faith and fair dealing by destroying the rights of Lava under the Sales Operating Agreement.

81. As a result of Mailot's breach, Lava has been damaged in an amount to be determined at trial.

## COUNT VII
## Tortious Interference with Existing and Prospective Contractual Relationships Against Defendants

82. Lava repeats and realleges paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83. At times relevant to the subject matter, Lava had existing contractual relations with its customers, including but not limited to those identified herein.

84. At times relevant to the subject matter, Lava had prospective contractual relations with its customers, including customers searching for MOODMATS products and other goods and services provided by Lava.

85. Defendants were aware of these prospective and existing contractual relationships.

86. Defendants, along with the fictitious defendants identified herein, have tortiously interfered with these prospective and existing contracts by, among other things, soliciting these customers, misappropriating customer information, and intentionally creating confusion so that the customers would falsely think they were dealing with Lava and purchasing Lava goods and services.

87. Defendants have tortiously interfered with these prospective and existing contracts and relationships in an effort to divert current Lava customers for their own benefit.

88. As a result of Defendants' misconduct, Lava has been damaged.

89. Defendants have acted knowingly, intentionally and maliciously, without justification and with a willful and wanton disregard of Lava's rights.

90. Lava is entitled to injunctive relief because it has no adequate remedy at law or, the remedy at law available to it would not adequately protect it from Defendants' wrongful conduct.

91. Lava is also entitled to compensatory and punitive damages for the wrongful, intentional and malicious conduct of Defendants in an amount to be determined at trial.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court:

(a) temporarily, preliminarily, and permanently enjoin Defendants, their agents, servants, officers, employees and representatives, and all other persons, firms or corporations in active concert or participation with them,

    (i) from making any use of the Lava Trademark in connection with the manufacturing, marketing and/or sale of goods;

    (ii) from engaging in any further act of infringement of the Lava Trademark and trade name;

    (iii) from offering, providing, promoting, marketing, or advertising any goods using the Lava Trademark, trade name, or any colorable imitation thereof;

    (iv) from engaging in any conduct that tends to confuse, cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Lava, or as to the origin, sponsorship or approval by Lava of the products of Defendants;

(v) from making any use of the mark "MOODMATS" in connection with the sale of rubber mats and coasters;

(b) order Defendants to deliver up to Plaintiff for destruction or other disposition any inventory of merchandise and all advertising, promotional material, or other material in their possession or control, that bear the Lava Trademark, the tradename or the mark MOODMATS;

(c) order Defendants to recall from all channels of distribution any goods or materials distributed by them, or either of them, that bear the mark or name MOODMATS, or any colorable imitations thereof;

(d) award damages according to proof at trial that Lava has suffered as result of Defendants' acts of infringement, misappropriation, unfair competition; breach of contract, breach of the covenant of good faith and fair dealing, and as a result of Defendants' tortious interference.

(f) award to Plaintiff the profits realized by Defendants as a result of their acts of infringement, misappropriation and unfair competition;

(g) award Plaintiff statutory damages, punitive damages, and costs of action, including reasonable attorney's fees, pursuant to 15 U.S.C. § 1117; and

(h) grant Plaintiff such other and further relief as this Court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Lava hereby demands a trial by jury on all issues so triable.

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

Pursuant to Local Civil Rule 11.2, Lava states that, to its knowledge, the matter in controversy in this action is not the subject of any other action in any court, or any pending arbitration or administrative proceeding.

By: */s/ David A. Ward*
David A. Ward

Dated January 16, 2019

Respectfully submitted,
**KLUGER HEALEY, LLC**

By: s/ 
William H. Healey
David A. Ward
106 Apple Street, Suite 302
Tinton Falls, NJ 07724
Tel: (973) 307-0800
Fax: (888) 635-1653
dward@klugerhealey.com
whealey@klugerhealey.com